1

2

3

4

5

6

7              UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   BRYAN DAMON PATTERSON,                    No.  2:12-cv-2475-KJM-EFB P

11                  Petitioner,

12           v.                                FINDINGS AND RECOMMENDATIONS

13   PEOPLE OF THE STATE OF
     CALIFORNIA,
14
                   Respondent.
15

16   I.      Introduction

17           Petitioner, Bryan Damon Patterson, is a state prisoner proceeding pro se with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Patterson challenges his 2009

19   conviction entered against him in the Solano County Superior Court on charges of two counts of

20   robbery (Cal. Pen. Code § 211), one count of aiding in assault (Cal. Pen. Code § 245(a)(2)), and

21   the use of a firearm in the commission of one of the robberies (Cal. Pen. Code § 12022.53(b));

22   plus a five-year enhancement pursuant to Cal. Pen. Code § 667.5(a)(1).  Patterson is currently

23   serving a sentence of twenty-seven years imprisonment.

24           This action is proceeding on the original petition filed October 1, 2012, as to the following

25   claims: (1) "the People of the State of California altered and concealed material evidence in an

26   official proceeding;" and (2) "the People of the State of California obstructed an official

27   proceeding."  Pet. at 11, 19.  On February 14, 2013, respondent filed an answer.  ECF No. 15.  On

28   /////

                                                    1

1    March 27, 2013, petitioner filed a traverse.[1]  ECF No. 23.  Also before the court are Patterson's

2    March 27, 2013 motion for a jury trial or evidentiary hearing (ECF No. 22), July 1, 2013 motion

3    for judgment (ECF No. 27), January 24, 2014 motion of inquiry (ECF No. 30), and January 24,

4    2014 motion for judgment (ECF No. 31).  For the reasons state below, petitioner's application for

5    habeas corpus relief and the outstanding motions must be denied.

6    II.    Procedural Background

7          Following Patterson's 2009 conviction in which he represented himself at trial, Patterson

8    filed a notice of appeal with the California Court of Appeal on November 8, 2010.  Resp't's

9    Lodged Doc. ("Lodg. Doc.") 5.  Patterson's appeal presented the following three grounds for

10   relief: (1) the trial court's ex parte communications with the prosecutor violated appellant's right

11   to a fair trial; (2) the admission of nonverbal hearsay was error; and (3) the failure to instruct the

12   jury on the improper destruction of evidence was error.  *Id.*  The California Court of Appeal

13   affirmed the judgment in an unpublished opinion filed on July 27, 2011.  Lodg. Doc. 8.  On

14   August 5, 2011, Patterson filed a petition for rehearing with the California Court of Appeal.

15   Lodg. Doc. 9.  On August 19, 2011, the California Court of Appeal issued an order denying the

16   petition for rehearing, and modifying one sentence of the July 27, 2011 opinion.  Lodg. Doc. 10.

17         On May 19, 2011, before the California Court of Appeal issued its order on Patterson's

18   direct appeal, Patterson filed a petition for writ of habeas corpus with the California Supreme

19   Court.  The petition presented four grounds for habeas relief:  (1) the trial court violated

20   Patterson's constitutional rights by refusing to dismiss the case because of the destruction of

21   material evidence; (2) the prosecution violated Patterson's constitutional rights when it

22   intentionally prepared and offered fraudulent evidence; (3) the trial judge and prosecution

23   violated Patterson's constitutional rights when they conducted ex parte communications outside

24   Patterson's presence; and (4) the trial court violated Patterson's constitutional rights when it

25   admitted insufficient evidence, destroyed evidence, and prejudicial hearsay testimony.  Lodg.

26   Doc. 13 at 1-38.  The California Supreme Court denied the petition on October 19, 2011 without

27   _____

28         [1] Petitioner filed a duplicate traverse on April 18, 2013.  *See* ECF No. 24.  The duplicate
     will be disregarded.

1 comment but with citation to *People v. Duvall*, 9 Cal.4th 464, 474 (Cal. 1995), *In re Waltreus*, 62

2 Cal.2d 218, 225 (Cal. 1965), *In re Dixon*, 41 Cal.2d 756, 759 (Cal. 1953), and *In re Lindley*, 29

3 Cal.2d 709, 723 (Cal. 1947).  Lodg. Doc. 14.

4        On August 24, 2011, while his petition for writ of habeas corpus was pending before the

5 California Supreme Court, Patterson filed a petition for direct review with the California Supreme

6 Court, presenting the same three claims that were presented to the California Court of Appeal.

7 Lodg. Doc. 11.  The California Supreme Court denied the petition for review without comment or

8 citation to authority on October 26, 2011.  Lodg. Doc. 12.

9        Following affirmance of his conviction, Patterson filed the instant federal action.[2]

10 III.    Factual Background

11        The opinion of the California Court of Appeal on direct appeal contains a factual

12 summary of Patterson's offense.  After independently reviewing the record, the court finds this

13 summary to be accurate and adopts it herein.[3]

14

15           Vallejo Police Officer Ronald Braxton was on routine patrol at 2:00
a.m. one morning when he heard over the radio that there had been

16           a robbery at the local Walgreen's store.  Just after hearing the
broadcast, Officer Braxton spotted a car in the area.  He stopped his

17           patrol car to watch the car, and once it passed him, he began to

18    [2] It appears from the record that Patterson may have filed a petition for writ of certiorari
with the Supreme Court on or about December 21, 2011, following the California Supreme

19 Court's October 19, 2011 denial of his petition.  *See* Lodg. Doc. 13.  However, the record does
not contain the Supreme Court's decision, if any, on this petition.  A review of the Supreme Court

20 docket shows that Patterson filed two petitions for writ of certiorari.  The first petition for writ of
certiorari was denied on January 10, 2011.  *See Patterson v. Superior Court of California, Solano*

21 *Cnty.*, 131 S.Ct. 930 (2011) (denying petition for writ of certiorari from the Ninth Circuit); *see
also* Case No. 2:09-cv-00768 GEB EFB (HC), ECF Nos. 23, 30 (district court's denial of

22 Patterson's petitions for writs of mandate for lack of jurisdiction affirmed by the Ninth Circuit).
The second petition for writ of certiorari was denied by the Supreme Court on April 2, 2012.  *See*

23 *Patterson v. California*, 132 S.Ct. 1865 (2012) (denying writ of certiorari following the California
Court of Appeal's July 27, 2011 denial of Patterson's appeal).

24    [3] The court presumes that the state court's findings of fact are correct unless petitioner
rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v.*

25 *Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  "Clear and convincing evidence" within the
meaning of § 2254(e) "requires greater proof than preponderance of the evidence" and must

26 produce "an abiding conviction" that the factual contentions being advanced are "highly
probable."  *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (quoting *Sophanthavong v.*

27 *Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004)).  Petitioner has not overcome the presumption with
respect to the underlying events.  The court will therefore rely on the state court's recitation of the

28 facts.

follow it.  Soon he was engaged in a high speed pursuit that ended when Officer Braxton trapped the car at the end of a cul-de-sac. When he did, the three men got out of the car and ran.  Patterson was one of them.  He was apprehended by another officer and brought to Officer Braxton several minutes later.  Patterson was detained in a patrol car.

Meanwhile, Officer Rob Wardlow picked up robbery victim Susan Fowler at the Walgreen's and drove her to where Patterson was detained by the police.  When they got there, she pointed to Patterson as the man who robbed her.  Then she was taken to the cul-de-sac where Officer Braxton stopped the car.  She pointed to a red purse on the floor of the car as hers and it was returned to her.
When officers searched Patterson's pockets incident to his arrest, they found a large amount of cash and a Walgreen's cash register receipt.  While he was being driven to the police station, Patterson told an officer that he ran because he thought there was a warrant out for his arrest.  He also explained that he had a lot of money because he was a drug dealer, but that he did not have any drugs on him because he discarded them while he was running away from the police.

Patterson testified at trial.  He was driving in the vicinity of the Walgreen's store when three men approached his car, assaulted him by punching him in the face and took his car away from him. Because he thought there was a warrant out for his arrest, he had drugs on him, and he had argued with his parole officer earlier in the day, Patterson was trying to avoid the police.  Following the carjacking he tried walking to a friend's house but got lost because he didn't know the area very well.  So, he wandered around on foot for 30 to 45 minutes, when he saw his car being chased by the police.  Because the police were in the area, he too started to run and was ultimately confronted by them and apprehended.

When Officer Braxton came up to Patterson and some other officers, he said Patterson had hopped out of the car involved in the pursuit.   But Patterson believes the people who robbed the Walgreen's were the same ones who took his car.  He also denied having the Walgreen's receipt and said it was planted on him by the police.

The robbers were all said to be armed and wearing dark hooded sweatshirts.[FN1]   One wore white tennis shoes.  When he was arrested, Patterson was wearing a white t-shirt, black jeans and white tennis shoes.  Three black hooded sweatshirts were found where the car was stopped in the cul-de-sac. There was also some candy similar to the candy that was taken from the Walgreen's on the floor of the car.

FN1.  One of the victims testified that two of the men wore black sweatshirts and one wore a brown sweatshirt.

Lodg. Doc. 8 at 2-3.

/////

4

IV.     Standards Governing Habeas Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Williams*, 529 U.S. at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). This does not mean, however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and

/////

/////

5

1   when they proceed on the basis of factual error.  *See, e.g.*, *Williams*, 529 U.S. at 397-98; *Wiggins*,

2   539 U.S. at 526-28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388-909 (2005); *Porter v.*

3   *McCollum*, 130 S.Ct. 447, 454 (2009).

4        The "unreasonable application" clause permits habeas relief based on the application of a

5   governing principle to a set of facts different from those of the case in which the principle was

6   announced.  *Lockyer*, 538 U.S. at 76.  AEDPA does not require a nearly identical fact pattern

7   before a legal rule must be applied.  *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007).  Even a

8   general standard may be applied in an unreasonable manner.  *Id.*  In such cases, AEDPA

9   deference does not apply to the federal court's adjudication of the claim.  *Id.* at 948.

10       Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review

11   is confined to "the state court's actual reasoning" and "actual analysis."  *Frantz*, 533 F.3d at 738

12   (emphasis in original).  A different rule applies where the state court rejects claims summarily,

13   without a reasoned opinion.  In *Richter*, *supra*, the Supreme Court held that when a state court

14   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

15   determine what arguments or theories may have supported the state court's decision, and subject

16   those arguments or theories to § 2254(d) scrutiny.  *Richter*, 131 S.Ct. at 786.

17       Relief is also available under AEDPA where the state court predicates its adjudication of a

18   claim on an unreasonable factual determination.  Section 2254(d)(2).  The statute explicitly limits

19   this inquiry to the evidence that was before the state court.  Even factual determinations that are

20   generally accorded heightened deference, such as credibility findings, are subject to scrutiny for

21   objective reasonableness under § 2254(d)(2).  *See, e.g.*, *Miller-El v. Dretke*, 545 U.S. 231, 240

22   (2005) (rejecting credibility finding as unreasonable in light of the evidence before the state

23   court).

24       To prevail, a habeas petitioner must establish the applicability of one of the § 2254(d)

25   exceptions and also must also affirmatively establish the constitutional invalidity of his custody

26   under pre-AEDPA standards.  *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc).  There is

27   no single prescribed order in which these two inquiries must be conducted.  *Id.* at 736-37.

28   /////

1  AEDPA does not require the federal habeas court to adopt any one methodology.  *Lockyer v.*

2  *Andrade*, 538 U.S. 63, 71 (2003).

3  Finally, the court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002); *see also Barker v. Fleming*,

5  423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated a claim,

6  we analyze the last reasoned decision.").  Where the state court reaches a decision on the merits

7  but provides no reasoning to support its conclusion, a federal habeas court independently reviews

8  the record to determine whether habeas corpus relief is available under section 2254(d).  *Himes v.*

9  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.

10  2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has

11  denied the claim on procedural grounds, AEDPA's deferential standard does not apply and a

12  federal habeas court must review the claim de novo.  *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th

13  Cir. 2003).

14  Here, petitioner raised his claim regarding suppression and destruction of evidence, in

15  addition to three other claims, for the first time on collateral review before the California

16  Supreme Court, which denied it in an unexplained order with citation to *People v. Duvall*, 9

17  Cal.4th at 474;[4] *In re Waltreus*, 62 Cal.2d at 225;[5] *Ex parte Dixon*, 41 Cal.2d at 759;[6] and

18  /////

19  /////

20  [4] A citation to *Duvall* stands for the proposition that the petitioner must "state fully and with particularity the facts on which relief is sought" and "include copies of reasonably available
21  documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." *Duvall*, 9 Cal.4th at 474; *Gaston v. Palmer*, 417 F.3d 1030, 1036-37
22  (9th Cir. 2005).

23  [5] A *Waltreus* citation is "intended to communicate that because the issue was previously raised and rejected on direct appeal, and because the petitioner does not allege sufficient
24  justification for the issue's renewal on habeas corpus, the issue is procedurally barred from being raised again." *In re Harris*, 5 Cal.4th 813, 825 (1993); *In re Robbins*, 18 Cal.4th 770, 814 n.34
25  (1998); *see also Carter v. Giurbino*, 385 F.3d 1194, 1196 (9th Cir. 2004) (*Waltreus* "holds that issues actually raised and rejected on appeal cannot be raised anew in a state petition for writ of
26  habeas corpus.").

27  [6] A *Dixon* citation indicates that the failure to raise an issue on appeal generally prohibits raising the issue in a post-appeal habeas corpus petition.  *La Crosse v. Kernan*, 244 F.3d 702, 707
28  (9th Cir. 2001); *Fields v. Calderon*, 125 F.3d 757, 762 (9th Cir. 1997).

1   *Ex parte Lindley*, 29 Cal.2d at 723.[7]  *See* Lodg. Doc. 14.  Because the California Supreme Court

2   did not reach the merits of petitioner's claims, AEDPA's deferential standard does not apply to

3   claim one, and the court reviews the claim de novo.  *Nulph*, 333 F.3d at 1056; *Cone v. Bell*, 556

4   U.S. 449 (2009); *Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

5   V.      Destruction and Suppression of Exculpatory Evidence

6           Patterson first claims that the State "altered and concealed material evidence in an official

7   proceeding in violation of" 18 U.S.C. § 1512(c)(1) and the Fourteenth Amendment.  Pet. at 11.

8   As a threshold matter, 18 U.S.C. § 1512 has no application here.  As used in Section 1512, an

9   "official proceeding" means "a proceeding before a Federal Government agency which is

10  authorized by law."  18 U.S.C. § 1515(a)(1)(C).  Here, Patterson's criminal proceeding was held

11  before a state court, not a Federal Government agency.  To the extent Patterson is alleging that his

12  constitutional rights were violated when the State allegedly destroyed and altered or suppressed

13  exculpatory evidence, the claim for relief must be denied.

14          The claim involves two specific allegations.  First, Patterson contends that the State

15  "maliciously altered" a copy of a vehicle report, "concealed the authentic copy" and then

16  "fabricated an entirely false claim that they attempted to preserve [Patterson's] vehicle."  Pet. at

17  16.  Second, Patterson contends that the State falsified an audit trail and "suppressed exonerating

18  evidence," Traverse at 14, "to cover up the fact that the store receipt used to convict . . . petitioner

19  was actually criminally planted on him,"  Pet. at 18.  Each is addressed in turn below.

20          A.      Vehicle Report

21          Patterson first argues that the State acted in bad faith with regard to the destruction of his

22  vehicle.  In that regard, Patterson avers that the State altered the vehicle report that was given to

23  the tow company in an effort to support an allegedly false claim that it attempted in good faith to

24  preserve the vehicle.  Pet. at 16.  Patterson's theory is that he was carjacked prior to the

25  Walgreen's robbery and the carjackers used his vehicle to commit the robbery.  Patterson argues

26  that blood splatter in his car could have supported his defense of third party culpability, thereby

27  _____

28          [7] *Lindley* "stands for the California rule that a claim of insufficiency of evidence can only
    be considered on direct appeal, not in habeas proceedings."  *Carter*, 385 F.3d at 1196.

1   exonerating him of the charged crimes.  Patterson claims that he was unable to examine his

2   vehicle for blood splatter after the robbery because it was sold in bad faith.

3        By way of background to this claim, the state court record reflects the following relevant

4   facts.  On January 29, 2009, the trial court appointed Patterson, who was representing himself, an

5   investigator to assist with the preparation of his defense.  Lodg. Doc. 1 at 69-70.  In or around

6   February 2009, the trial court granted Patterson's request for, among other things, the

7   examination of alleged blood splatter in his vehicle which was used as the getaway car in the

8   Walgreen's robbery.  Lodg. Doc. 4 at 5-6.  During a hearing on February 26, 2009, the trial court

9   informed the parties that Patterson's investigator found out that the vehicle was no longer

10  available for examination because it had been destroyed.  *Id.* at 38.  According to the record, the

11  vehicle was sold by the tow yard where the vehicle had been stored by the Vallejo Police

12  Department.  *Id.*  As a result, on or around August 31, 2009, Patterson filed a motion to dismiss or

13  exclude evidence.[8]  *See id.* at 246.

14       The trial court held two hearings on Patterson's motion on September 10 and September

15  14, 2009.  *Id.* at 244-256, 270-73, 321-41.  Therein, Patterson argued that the prosecutor was

16  responsible for the destruction of the vehicle; and examination of it was relevant to his defense

17  because the alleged blood splatter "would show that an altercation occurred in the vehicle," and

18  support his defense that he "was robbed for the vehicle."  *Id.* at 252.  The prosecutor countered

19  that "there was no bad faith or anything even close to it, even negligence . . . by the Vallejo Police

20  Department."  *Id.* at 253.  The prosecutor argued that Officer Braxton, the officer responsible for

21  having the vehicle towed from the crime scene, placed a hold on the vehicle; and it was

22  "independently" sold by the tow company despite the hold request.  *Id.*  The State presented

23  Officer Braxton to testify regarding the hold he placed on the vehicle.  *Id.* at 270-73, 321-41.  In

24  that regard, Officer Braxton testified that he "asked [the tow company] to hold [the vehicle] until

25  further investigations."  *Id.* at 323.  During the hearing, Patterson presented two vehicle hold

26  forms, pointing out that one of the forms did not have a hold notation written on the top.  *Id.* at

27          [8] Patterson filed a motion to dismiss earlier in the proceedings, on May 27, 2009.  Lodg.
     Doc. 1 at 176-90.  This motion was withdrawn by Patterson on July 27, 2009.  Lodg. Doc. 4 at
28   171-72.  A copy of the August 2009 motion was not provided to the court.

1    325; *see also* Lodg. Doc. 3 at 1-2 (vehicle reports presented during the hearing).  Officer Braxton

2    testified that he filled out the form with the hold notation that read: "Hold/Braxton; Don't Release

3    until invest says okay."  Lodg. Doc. 4 at 327-28.  Officer Braxton further testified that the tow

4    company received a copy of the vehicle report with that particular hold notation on it.  *Id.* at 333-

5    34; Lodg. Doc. 3 at 2.  After hearing argument on Patterson's motion, the trial court denied the

6    motion, finding that Patterson failed to establish that the destroyed evidence was material, that the

7    exculpatory value was apparent before it was destroyed, or that the prosecution and/or their

8    agents acted in bad faith.  Lodg. Doc. 4 at 340-41.

9           A failure to preserve evidence violates a defendant's right to due process if the

10   unavailable evidence possessed "exculpatory value that was apparent before the evidence was

11   destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable

12   evidence by other reasonably available means."  *California v. Trombetta*, 467 U.S. 479, 489

13   (1984).  A defendant must also demonstrate that the police acted in bad faith in failing to preserve

14   the potentially useful evidence.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (noting an

15   "unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause . . . as

16   imposing on the police an undifferentiated and absolute duty to retain and to preserve all material

17   that might be of conceivable evidentiary significance in a particular prosecution"); *see also*

18   *Illinois v. Fisher*, 540 U.S. 544, 548-49 (2004); *Phillips v. Woodford*, 267 F.3d 966, 986-87 (9th

19   Cir. 2001).  Bad faith can be demonstrated where there is evidence in the record of "official

20   animus towards [a defendant] or of a conscious effort to suppress exculpatory evidence."

21   *Trombetta*, 467 U.S. at 488.  The presence or absence of bad faith turns on the government's

22   knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed.

23   *Youngblood*, 488 U.S. at 56-57 n. *; *see also Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir.

24   1997); *United States v. Barton*, 995 F.2d 931, 934 (9th Cir. 1993); *United States v. Cooper*, 983

25   F.2d 928, 931 (9th Cir. 1993).  "The mere failure to preserve evidence which could have been

26   subjected to tests which might have exonerated the defendant does not constitute a due process

27   violation."  *Phillips*, 267 F.3d at 987 (quoting *United States v. Hernandez*, 109 F.3d 1450, 1455

28   (9th Cir. 1997)); *see also Youngblood*, 488 U.S. at 57.

1    Patterson claims in the instant petition that the State acted in bad faith because it presented

2    an "altered and fabricated" vehicle report that it used to "'justify' the destruction" of the vehicle.

3    Traverse at 13.  In his traverse, Patterson provides two forms of the vehicle report in question.

4    *See* Traverse at 27-28.  One of the forms reads: "Hold/Braxton; Don't Release until invest says

5    okay" written on the top, *id.* at 27, while the other form has a shorter version of the notation that

6    reads: "Hold/Braxton," *id.* at 28.[9]  Patterson appears to suggest that the shorter version of the

7    report was altered to add "Don't Release until invest says okay" only after it was discovered that

8    the vehicle was sold.  Patterson argues that the difference in the two reports proves that the State

9    fabricated the report with the shorter notation to cover-up the fact that it acted in bad faith and

10   allowed the vehicle to be sold by the tow company.

11       Patterson's argument that bad faith may be inferred from the difference in the two reports

12   is not persuasive.  The record shows that Officer Braxton testified that he filled out and gave the

13   tow company the vehicle report with the longer hand-written notation at the top of the form.

14   Lodg. Doc. 4 at 327-28, 333-34 (referencing Lodg. Doc. 3 at 2).  This testimony alone refutes

15   Patterson's argument in his petition that the discrepancy between the two vehicle reports evinces

16   bad faith.  Officer Braxton also testified that the vehicle was sold by the tow company "probably

17   due to some miscommunication probably between [the tow] company and our police

18   department."  Lodg. Doc. 4 at 330.  There is simply no evidence presented by Patterson that

19   supports a finding of bad faith.  The record shows that the Vallejo Police Department "act[ed] in

20   'good faith and in accord with their normal practice'" when it had the vehicle towed and wrote

21   "Hold/Braxton; Don't Release until invest says okay" on the top of the vehicle report.  *Trombetta*,

22   467 U.S. at 488 (quoting *Killian v. United States*, 368 U.S. 231, 242 (1961)).  Accordingly,

23   Patterson has failed to make a showing that the State destroyed the vehicle in bad faith.

24       Nor has Patterson presented any evidence establishing that the blood splatter in the vehicle

25   would prove to be exculpatory, or that the State was aware of the alleged exculpatory value

26   [9] With his traverse, Patterson provides one version of the vehicle report -- the version with
     only "Hold/Braxton" written on it -- that is not part of the state court record.  While Patterson
27   referred to three versions of the form during the September 14, 2009 hearing, Lodg. Doc. 4 at
     325, only two forms were entered as evidence and are included in the record.  However, this
28   discrepancy does not affect resolution of the issue before the court.

1   before it was destroyed. *Youngblood*, 488 U.S. at 56-57 n. *; *Trombetta*, 467 U.S. at 489

2   ("Although the preservation of [the destroyed evidence] might conceivably have contributed to

3   respondents' defenses . . . the chances are extremely low that preserved [evidence] would have

4   been exculpatory."). Here, Patterson's contention that the blood splatter in the vehicle would

5   have supported his defense theory that he was carjacked and the carjackers committed the

6   Walgreen's robbery is mere speculation and, therefore, of questionable assistance to Patterson.

7   Patterson's claim that the State failed to preserve the vehicle which "could have been subjected to

8   tests which might have exonerated [him] does not constitute a due process violation." *Phillips*,

9   267 F.3d at 987 (quoting *Hernandez*, 109 F.3d at 1455).

10      Because the destruction of the vehicle was not in bad faith and the possibility that the

11  vehicle had exculpatory value was not established, Patterson has not shown that his constitutional

12  rights were violated and this claim should be denied.

13          B.      Audit Trail

14      Patterson next contends that the State provided a false audit trail of the photographs of his

15  case in an effort to suppress an exculpatory photograph. Patterson's theory here is that Vallejo

16  Police Officers planted a Walgreen's receipt on his person during his arrest. Patterson avers that

17  the State "prepared and offered [a] fraudulent audit trail and suppressed exonerating evidence" to

18  cover-up the police officers' actions. Traverse at 14. Patterson asserts that a photograph of the

19  receipt officers found on him was taken at the Walgreen's crime scene. Patterson sought the audit

20  trail to prove this photograph existed, thus corroborating his theory that officers planted evidence

21  on him. *See*, *e.g.*, Lodg. Doc. 4 at 931-32. Patterson also claims that the audit trail he was

22  provided was not printed directly from the VeriPic system, but was rather modified and printed

23  using Excel to cover-up the exculpatory photograph the State allegedly withheld. Traverse at 16.

24      To provide context to Patterson's claim, the following facts are relevant. In preparing his

25  defense, Patterson requested all the photographs taken of the crime scenes, as well as a summary

26  of the photographs, referred to as an audit trail. *See*, *e.g.*, Lodg. Doc. 4 at 97, 157, 162. On

27  several occasions the prosecutor represented to the court that all of the crime scene photographs

28  had been given to Patterson, and that no pictures were taken at the Walgreen's crime scene. *Id.* at

28, 70, 96, 173.  During a hearing on July 29, 2009, the prosecutor confirmed with the trial court that he provided Patterson with the requested audit trail printed from the VeriPic system.  *Id.* at 172-73.  On October 26, 2009, Patterson filed a post-verdict motion in which he argued, among other things, that the audit trail produced by the prosecutor in July 2009 was "altered and fraudulent."  Lodg. Doc. 1 at 319.  Patterson fixated his argument on the fact that there were two numbers for his case, one with a dash and one without a dash; and also on the fact that photographs from another case were connected with one of these case numbers.  Lodg. Doc. 4 at 885-93, 931.  Because of these discrepancies, Patterson argued that exculpatory photographs existed and were being withheld from him.  *Id.* at 931.  On November 24, 2009, the prosecutor presented the IT Manager for the Vallejo Police Department as a witness to explain the reason for the two case numbers and the unrelated photographs.  During his testimony, the IT Manager explained that, prior to the VeriPic system being installed, the common practice was to put a dash in the case number.  *Id.* at 911.  The witness testified that "[s]ince the new system was put in in May, 2008, . . . we decided to change the way we put in the numbers" and "a lot of the officers don't always remember to take out the dash, but if you put in the dash, [the VeriPic system] actually thinks of it as a whole different case number."  *Id.*  The witness also testified that he "took out every picture that was associated with the two" case numbers; and that "[t]he VeriPic system does not allow photo deletions."  *Id.* at 917; *see also id.* at 931.  Finally, in response to Patterson's concern that the audit trail was not printed directly from the VeriPic system, the witness provided the following explanation during his testimony:

> [W]hen you go into VeriPic and you go to request an audit trail, what it does is it lets you highlight what you want, and then it creates the Excel file.  So this is what VeriPic creates, straight out of the program.  I don't make the Excel document.  I didn't cut and paste it.  I put in the information and it makes this file.

*Id.* at 927-28.

Due process requires that the prosecution disclose exculpatory evidence within its possession.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Cooper*, 510 F.3d at 924.  There are three components of a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been

1   suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

2   *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Banks v. Dretke*, 540 U.S. 668, 691

3   (2004); *Silva v. Brown*, 416 F.3d 980, 985 (9th Cir. 2005).  "The touchstone of [the prejudice

4   analysis] is whether admission of the suppressed evidence would have created a 'reasonable

5   probability of a different result.'"  *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007)

6   (citations omitted).

7          Here, Patterson has failed to prove a *Brady* violation.  First, there is no evidence, apart

8   from Patterson's unsupported speculation, that a photograph of the receipt was taken at the

9   Walgreen's crime scene.  On several occasions, the prosecutor represented to the trial court that

10  all of the case photographs were handed over to Patterson; and that he confirmed that the Vallejo

11  Police Department did not take any photographs at the Walgreen's crime scene.  Lodg. Doc. 4 at

12  70, 96, 173.  Moreover, during the trial, the officer who responded to the Walgreen's crime scene

13  testified that he did not take any photographs of the scene, nor did he see that any photographs

14  were taken.  *Id.* at 634.  Patterson has pointed to no evidence that a photograph of the receipt

15  existed.

16         Patterson's speculative argument that the audit report was altered to cover-up suppression

17  of the alleged photograph is also not supported by the record.  The Vallejo Police Department IT

18  Manager testified during a post-verdict hearing that he created the audit report given to Patterson

19  by requesting the information in the VeriPic program which "makes this file," referring to the

20  Excel file.  Lodg. Doc. 4 at 927-28.  In other words, the VeriPic program exports the data to an

21  Excel file for printing.  The IT Manager explicitly testified that he did not make the Excel

22  document but that "VeriPic creates" the Excel file "straight out of the program," *id.*, which

23  refutes Patterson's speculation that the audit report was fraudulently created using the Excel

24  program.  "The proponent of a *Brady* claim . . . bears the initial burden of producing some

25  evidence to support an inference that the government possessed or knew about material favorable

26  to the defense and failed to disclose it."  *United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009)

27  /////

28  /////

1  (citing *United States v. Lopez*, 534 F.3d 1027, 1034 (9th Cir. 2008), and *United States v.*

2  *Brunshtein*, 344 F.3d 91, 101 (2d Cir. 2003)).  Patterson has failed to meet this burden with

3  regard to a photograph of the receipt or the audit trail.

4      Finally, notwithstanding Patterson's pure speculation whether a photograph of the receipt

5  exists, or that it could exonerate him, Patterson has failed to show that admission of the evidence

6  would have created a reasonable probability of a different result at his trial.  Here, the State

7  presented other significant circumstantial evidence of Patterson's culpability for the robbery

8  which supported the jury's verdict.  *See Price*, 566 F.3d at 913 ("In determining whether the

9  failure to disclose *Brady* material undermines our confidence in the outcome of the trial, we must

10  weigh the withheld evidence 'in the context of the entire record.'") (quoting *Jernigan*, 492 F.3d at

11  1053).  The State relied on evidence showing that Officer Braxton was involved in a high-speed

12  pursuit of a suspect vehicle that he followed onto a dead-end road where it stopped.  Lodg. Doc. 4

13  at 463-68.  Once the vehicle stopped, Officer Braxton testified that he observed Patterson exiting

14  the vehicle and fleeing from it on foot.  *Id.* at 468-70, 474.  The State also presented evidence

15  showing that a red purse was taken from a victim during the robbery at Walgreen's, and the purse

16  was in the vehicle Officer Braxton saw Patterson exiting.  *Id.* at 623.  Furthermore, the State

17  presented evidence that Patterson was wearing the same clothing as one of the robbery suspects.

18  *Id.* at 474-75.  Finally, the State presented testimony by Officer Lofas who identified Patterson as

19  resembling one of the perpetrators shown in the video surveillance of the robbery.  *Id.* at 645-46.

20  In light of the evidence of Patterson's guilt, the court finds that a photograph of the receipt found

21  on Patterson would have little exculpatory value and would not present a "reasonable probability"

22  of altering the verdict.  *Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (suppressed evidence is

23  material if "the favorable evidence could reasonably be taken to put the whole case in such a

24  different light as to undermine confidence in the verdict"); *United States v. Diaz-Rodriguez*, 478

25  F.2d 1005, 1008 (9th Cir. 1973) ("A new trial is not automatically required whenever the

26  prosecution's files subsequently reveal[] evidence of possible utility to the defense but of unlikely

27  weight in altering the verdict."); *see also United States v. Bagley*, 473 U.S. 667, 682 (1985);

28  *Paradis v. Arave*, 240 F.3d 1169, 1176 (9th Cir. 2001).

1      Accordingly, Patterson's claim regarding the suppression of an omitted photograph and a

2      fraudulent audit report must be denied.

3      VI.     <u>Ex Parte Proceeding Outside of Patterson's Presence</u>

4      In his second claim, Patterson argues that the prosecutor "obstructed an official

5      proceeding in violation of" 18 U.S.C. § 1512(c)(2) when he engaged in an ex parte

6      communication with the trial judge regarding a witness Patterson subpoenaed. Pet. at 19.

7      Patterson also claims that this ex parte communication violated his "Sixth and Fourteenth

8      Amendment rights . . . to counsel and presence at all critical proceedings, to confrontation, to

9      produce witnesses, to due process, to equal protection of law, to a fair and impartial trial, and to

10      liberty." *Id.* at 21-22. As explained above, Patterson cannot bring a claim based on 18 U.S.C.

11      § 1512. To the extent Patterson claims he suffered a violation of his constitutional rights as a

12      result of the ex parte communication between the prosecutor and the trial judge, this claim for

13      relief should be denied.

14      As detailed above, Patterson believed the audit trail provided by the prosecution was

15      fraudulent and altered. Patterson relied on this allegation in his post-verdict motion for a new

16      trial. In support of this allegation, Patterson subpoenaed a VeriPic employee whom he sought to

17      testify that the audit trail the prosecutor provided was fabricated. *Id.* at 947-49, 953. During the

18      trial court's December 11, 2009 post-trial hearing, Patterson expressed concern that the

19      prosecutor contacted the witness on or around on December 9, 2009, and told her that she did not

20      have to comply with the subpoena. *Id.* at 947. The court explained that it had an ex parte

21      conversation with the prosecutor during which he requested that the trial judge excuse the witness

22      from honoring the subpoena because of medical reasons. *Id.* at 947-48. According to the record,

23      the witness contacted the prosecutor after receiving Patterson's subpoena and explained her

24      medical condition to him. *Id.* Patterson argued during the hearing that the prosecutor "interfered

25      with [his] presentation." *Id.* While the court stated that "there's no basis for having" the witness

26      appear, *id.*, it nevertheless permitted Patterson to provide an offer of proof as to why the VeriPic

27      employee's testimony would be relevant, *id.* at 952. Following Patterson's offer of proof the

28      court ordered the prosecutor to produce the witness on December 17, 2009. *Id.* at 959. On

1    December 14, 2009, the witness filed a motion to quash the subpoena.  Lodg. Doc. 1 at 414.  On

2    December 15, 2009, the court heard arguments from both parties on the witness' motion to quash.

3    Lodg. Doc. 4 at 961-74.  After hearing argument, the trial court granted the motion to quash,

4    finding that "there's been no showing that the specific testimony for [the VeriPic employee] is

5    necessary to support [Patterson's] view of this case and that she could offer relevant testimony."

6    *Id.* at 974.

7        A.    The State Court's Adjudication of the Claim

8            Patterson raised his claim regarding the ex parte communication before the California

9    Supreme Court in his petition for review.  Lodg. Doc. 11.  Because the California Supreme Court

10   summarily denied the petition for review, *see* Lodg. Doc. 12, the court must "look through" the

11   summary disposition to the last reasoned decision, that of the California Court of Appeal on direct

12   review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).  In rejecting Patterson's claim that

13   proceedings held outside his presence violated his constitutional rights, the appellate court

14   reasoned as follows:

15

16           There is no question that a criminal defendant representing himself
             has the right to be present at all critical stages of the proceedings.
17           (*People v. El* (2002) 102 Cal.App.4th 1047, 1050.)   Such a
             defendant's exclusion from a substantial portion of trial,
18           particularly when testimony is taken, is structural constitutional
             error that may be reversed without regard to prejudice.  (*People v.
19           Carroll* (1983) 140 Cal.App.3d 135, 142.)   But a showing of
             prejudice is required when a self-represented defendant is excluded
20           from a small portion of a trial, or from proceedings that bear no
             reasonable or substantial relationship to his or her defense of a
21           charge.  (*People v. Carasi* (2008) 44 Cal.4th 1263, 1299; *People v.
             El*, *supra*, 102 Cal.App.4th at p. 1050.)  While in camera or ex parte
22           proceedings are generally disfavored, they do not result in reversal
             where the subject of such discussions has no reasonable relationship
23           to the defense.  (*People v. Carasi*, *supra*, 44 Cal.4th at p. 1299.)

24           Here, Patterson seeks reversal because he was excluded from six
             hearings that primarily concerned the charges against his
25           codefendant.  He also challenges the trial court's decision to excuse
             a witness Patterson had subpoenaed for a postverdict motion
26           hearing following the judge's ex parte conversation with the
             prosecutor.   We have reviewed the transcript of each of the
27           proceedings held in Patterson's absence and the circumstances of
             the ex parte conversation.  While we can discern no reason from the
28           record why Patterson was not included in the proceedings or the
             district attorney was not instructed to seek to quash the subpoena by

17

noticed motion, none of the proceedings reasonably bore upon Patterson's ability to mount a defense to the charges or otherwise caused him any prejudice.

. . . .

. . . . Finally, on December 11, 2009, Patterson learned that the trial judge told the deputy district attorney in an ex parte conversation that a witness Patterson had subpoenaed for a posttrial motion need not appear.

. . . . Here, Patterson's absence from the pretrial hearings appears to have been as a matter of custom rather than deliberate exclusion, but it is nonetheless troubling. The same seems true of the ex parte conversation between the court and the district attorney concerning the subpoena. It seems more a matter of familiarity and informality. But although troubling and a cause for concern, these events were not prejudicial.

. . . .

Finally, Patterson apparently subpoenaed the witness for the posttrial motion to demonstrate that a police department witness had lied when he testified that Patterson was provided in discovery all the police photographs taken in his case. The record reflects that the court was very indulgent of Patterson's posttrial motions and his effort to prove that police suppressed exculpatory evidence. In the circumstances, there was no factual basis for the court to further entertain Patterson's claim, and no reason to conclude the court abused its discretion when it determined the witness need not appear. Thus, even though the court should not have quashed the subpoena in the ex parte discussion with the district attorney, doing so was not prejudicial.

Lodg. Doc. 8 at 3-6.

B.     Legal Standard

A criminal defendant has a right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness or reliability of the procedure. *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *United States v. Gagnon*, 470 U.S. 522, 527 (1985). A defendant must therefore be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence." *Stincer*, 482 U.S. at 745 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108 (1934)). The constitutional right to be present at every critical stage of the trial is based on the Fifth Amendment Due Process Clause and the Sixth Amendment Confrontation Clause. *United States v. Marks*, 530 F.3d 799, 812 (9th Cir. 2008). The right to be present during all critical stages of the proceedings is subject to harmless error analysis. *Rushen*

1  *v. Spain*, 464 U.S. 114, 117 (1983); *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005);

2  *Marks*, 530 F.3d 799.

3       C.     <u>Analysis</u>

4       Here, even if the trial court erred in excluding Patterson from the discussion between the

5  prosecutor and the judge regarding Patterson's subpoena of the VeriPic employee, any such error

6  was harmless.  An in-court hearing was later held, at which time Patterson was allowed to make

7  any arguments he could have made in support thereof during the earlier ex parte discussion.

8  Lodg. Doc. 4 at 947-59.  At the hearing in open court, Patterson presented his arguments in

9  support of his subpoena.  *Id.*  After considering Patterson's arguments, the court ordered the

10  prosecutor to have the witness appear.  *Id.* at 959.  Following this hearing, the court held another

11  in-court hearing during which Patterson was present and the parties addressed the witness' motion

12  to quash.  *Id.* at 962-74.  Patterson again presented his arguments, countered the arguments of the

13  prosecutor, and responded to the judge's concerns.  *Id.*  The court considered Patterson's

14  arguments and ruled on the witness' motion to quash, finding that the witness' testimony would

15  not have been relevant to Patterson's defense.  *Id.* at 974-75.

16       Considering the in-court hearings following the ex parte communication between the trial

17  judge and the prosecutor, the court finds that any error in excluding Patterson was harmless and

18  the state appellate court's rejection of Patterson's claim was neither contrary to, nor involved an

19  unreasonable application of clearly established federal law.  Accordingly, habeas relief is not

20  warranted on this claim.

21  VII.     <u>Motion for Evidentiary Hearing</u>

22       On March 27, 2013, Patterson filed a motion for jury trial or evidentiary hearing.  ECF

23  No. 22.  Patterson avers that he is entitled to an evidentiary hearing because, among other

24  reasons, "neither of petitioner's claims were adjudicated on the merits in state court."  *Id.* at 2.

25       Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

26  following circumstances:

27  /////

28  /////

1

2

(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

3

(A) the claim relies on--

4

5

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

6

7

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

8

9

10

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

11

Under this statutory scheme, a district court presented with a request for an evidentiary

12

hearing must first determine whether a factual basis exists in the record to support a petitioner's

13

claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*,

14

187 F.3d 1075, 1078 (9th Cir. 1999); *see also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

15

2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner requesting an

16

evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

17

*Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670, *Stankewitz v. Woodford*, 365 F.3d

18

706, 708 (9th Cir. 2004) and *Phillips*, 267 F.3d at 973).  To show that a claim is "colorable," a

19

petitioner is "required to allege specific facts which, if true, would entitle him to relief." *Ortiz v.*

20

*Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

21

For the reasons described above, Patterson's first claim regarding the destruction and

22

suppression of evidence is based on speculation and is therefore not "colorable."  The facts

23

alleged in support of this claim, even if established at a hearing, would not entitle Patterson to

24

federal habeas relief.  Further, Patterson has not identified any factual conflict that would require

25

this court to hold an evidentiary hearing in order to resolve.  Moreover, in *Cullen v. Pinholster*,

26

131 S.Ct. 1388 (2011), the United State Supreme Court held that "review under § 2254(d)(1) is

27

limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

28

at 1398.  Here, contrary to Patterson's assertion, the state appeals court addressed Patterson's

1   second claim regarding a proceeding held outside his presence on the merits. The court is bound

2   to the record that was before that state court. Nevertheless, Patterson has not shown that his

3   second claim for relief is "colorable," and the court concludes that an evidentiary hearing is not

4   appropriate with respect to this claim as well.

5          Accordingly, Patterson's request for an evidentiary hearing should be denied.

6   VIII.   Motions for Judgment

7          On July 1, 2013 and January 24, 2014, Patterson filed two separate motions for judgment.

8   ECF Nos. 27, 31. In his motions, Patterson requests the court to rule on his outstanding petition.

9   Patterson also renewed his motion for an evidentiary hearing in his July 1, 2013 motion. ECF

10   No. 27. On January 24, 2014, plaintiff also filed a motion styled as a "motion of inquiry" in

11   which Patterson requests the status of his petition.[10] ECF No. 30. In light of the court's findings

12   and recommendations, these motions should be denied as moot.

13   IX.   Conclusion

14          Accordingly, for all the reasons set forth above, IT IS HEREBY RECOMMENDED that:

15          1. Patterson's application for a writ of habeas corpus be denied;

16          2. Patterson's March 27, 2013 motion for jury trial or evidentiary hearing (ECF No. 22)

17   be denied;

18          3. Patterson's July 1, 2013 motion for judgment (ECF No. 27) be denied as moot;

19          4. Patterson's January 24, 2014 motion of inquiry (ECF No. 30) be denied as moot; and

20          5. Patterson's January 24, 2014 motion for judgment (ECF No. 31) be denied as moot.

21          These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

23   after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties. Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations." If Patterson files objections,

26   ─────────────────────
   [10] Patterson also argues in his "motion of inquiry" that, pursuant to 28 U.S.C. § 2266, the

27   court is required to issue a judgment on his petition within 60 days after which the case is
   submitted for decision or 450 days after the application has been filed. However, 28 U.S.C.

28   § 2266 applies to capital cases. Patterson is not subject to a capital sentence. Thus, this statue is
   not applicable to his petition.

1  he shall also address whether a certificate of appealability should issue and, if so, why and as to

2  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

3  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

4  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

5  service of the objections.  The parties are advised that failure to file objections within the

6  specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158

7  F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

8  Dated:  March 4, 2014.

9

10                                     EDMUND F. BRENNAN
                                       UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28